UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EDDIE R. CHANEY,

                              Plaintiff,

                                                                                DECISION AND ORDER

                                                                                 15-CV-6188L

                              v.

MEGAN J. BRENNAN,
Postmaster General, United States Postal Service,

                              Defendant.
_____

## INTRODUCTION

Plaintiff Eddie R. Chaney ("plaintiff") brings this action against United States Postmaster General Megan J. Brennan, alleging that the United States Postal Service ("USPS") subjected him to discrimination on the basis of disability and retaliation, all in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 et seq. and the Rehabilitation Act of 1973, 29 U.S.C. §791 et seq.[1]

The USPS now moves for summary judgment dismissing the complaint pursuant to Fed. R. Civ. Proc. 56 (Dkt. #18). For the reasons that follow, that motion is granted.

---

[1] Plaintiff's Complaint (Dkt. #1) also makes reference to Title VII, 42 U.S.C. §2000e et seq. However, plaintiff makes no other allegations and offers no proof concerning membership in any class protected by that statute, and his reference to it appears to have been in error. To the extent that plaintiff intended to assert such claims, they are dismissed as insufficiently stated.

**FACTUAL BACKGROUND**

In March 2013, plaintiff applied for a City Carrier Assistant ("CCA") position with USPS. On April 8, 2013, USPS made an offer of employment to plaintiff, contingent on two conditions: (1) USPS had to determine that plaintiff was medically suitable for the physical demands of the CCA position, which would require frequent walking, lifting heavy loads, and driving; and (2) plaintiff had to successfully complete a 90-day trial period during which his conduct and performance could be evaluated.

Plaintiff accepted the offer, and completed a USPS medical assessment form, indicating that he had a health condition and/or took medication that might impair his ability to perform CCA duties, and that he had work restrictions imposed by a medical care provider within the last two years that could affect his ability to perform the CCA position. As a result, USPS requested plaintiff's medical records and scheduled an examination by an independent physician, Dr. Elaine Tunaitis.

During the examination, plaintiff reported prior shoulder surgery, low back and neck pain exacerbated by heavy exertion, podiatric surgery and ongoing foot problems, and obstructive sleep apnea, for which plaintiff had been prescribed a CPAP which he used less than 50% of the time. Based on her examination of plaintiff, which included several physical tests, and her review of plaintiff's medical records, including plaintiff's report concerning his CPAP usage, Dr. Tunaitis concluded that plaintiff should be restricted to lifting weights no greater than 40 pounds, and that, due to the fact that his CPAP usage fell below the 70% threshold that she considered a minimum for safe driving, plaintiff should not drive.

In light of the restrictions indicated by Dr. Tunaitis, USPS Manager of Labor Relations James Gavner ("Gavner"), who also served as Chairman of the District Reasonable

Accommodation Committee ("DRAC"), referred plaintiff's application to the DRAC to determine whether reasonable accommodations could be made. After reviewing plaintiff's application and medical records, and holding a discussion with plaintiff on July 2, 2013, the DRAC determined that plaintiff's work restrictions could not be accommodated within the confines of the CCA position. Although the DRAC found that plaintiff's lifting restriction could be accommodated by providing plaintiff with requested assistance with heavy loads, there was no possible accommodation for plaintiff's "no driving" restriction, as driving was an essential component of the CCA position.

On July 24, 2013, plaintiff contacted the USPS's Equal Employment Opportunity Office, and alleged that Dr. Tunaitis and Gavner had subjected him to discrimination.

Plaintiff also undertook to increase his CPAP usage to raise it above the 70% threshold that Dr. Tunaitis had identified as determinative for purposes of assessing safe driving by persons with sleep apnea. On July 24, 2013, the Unity Sleep Disorders Clinic issued a note affirming that plaintiff was now 77% compliant in his CPAP usage. The note was provided to Dr. Tunaitis on or around August 27, 2013, at which time she immediately lifted the driving restriction. Plaintiff was cleared to begin work as a CCA on September 5, 2013.

In spite of his commencing work, on September 28, 2013, plaintiff filed a formal complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging disability-based discrimination by Dr. Tunaitis and Gavner with respect to the initial denial of the CCA position.

On October 7, 2013, plaintiff began his training and orientation period as a CCA. He was assigned to the Rochester General Mail Facility under the management of Ralph Minni ("Minni"). Mail routes at the GMF were previously planned and tested by the USPS, and further

negotiated in conjunction with the postal carriers union. Among the performance expectations for plaintiff and other CCAs was the timely completion of mail delivery routes within an eight-hour day. However, between October 26 and November 21, 2013, plaintiff failed to complete his deliveries 17 times, requiring an additional 24 hours of work. Plaintiff was given additional training and counseling, but his performance failed to improve. Plaintiff was two-and-a-half hours late in completing his deliveries on November 23, 2013, and on November 28, 2013, shortly before the expiration of plaintiff's 90-day trial period, Minni discharged him.

Plaintiff filed the instant action on April 3, 2015.

## DISCUSSION

Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); s*ee also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). While courts should be cautious about granting summary judgment in cases where motive, intent or state of mind are at issue, a common component of discrimination actions, *see Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988); *Montana v. First Federal Savings and Loan Ass'n of Rochester*, 869 F.2d 100, 103 (2d Cir.1989), "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to... other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985) (summary judgment rule would be rendered sterile if mere incantation of intent or state of mind would act as a talisman to defeat an otherwise valid motion). *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993) (trial courts should not "treat discrimination differently from other ultimate questions of fact").

While granting plaintiff the liberal interpretation and favorable inferences due to him as a nonmovant, I find that he has nonetheless failed to establish a prima facie case of discrimination or retaliation, and/or to rebut the defendants' legitimate, nondiscriminatory reasons for declining to employ him initially, or for subsequently terminating his employment.

## I. Plaintiff's Discriminatory Failure to Hire Claim

Plaintiff claims that the USPS discriminated against him when he was initially denied employment as a CCA based on Dr. Tunaitis's "no driving" restriction.

Title I of the ADA prohibits employers from discriminating against any "qualified individual with a disability because of the disability of such individual in regard to" any aspect of employment." 42 U.S.C. §12112(a). Plaintiff's claims of employment discrimination in violation of the ADA are subject to the burden-shifting analysis articulated in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, plaintiff must establish a prima facie case of discrimination by demonstrating: (1) that plaintiff is a member of a protected class (that is, that he was disabled within the meaning of the ADA); (2) that he was "otherwise qualified" to perform the requirements of his potion, with or without reasonable accommodations; and (3) an adverse employment action, occurring under (4) circumstances giving rise to an inference of discrimination. *See Collins v. New York City Transit Authority*, 305 F.3d 113, 118 (2d Cir. 2002); *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 870 (2d Cir. 1998). Once he has established a prima facie case, the burden shifts to the defendant employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000). The burden then returns to plaintiff, to supply evidence that the legitimate, nondiscriminatory reason offered by the defendant is a pretext. *See St. Mary's Honor Center*, 509 U.S. at 508.

Initially, plaintiff must demonstrate that he was disabled within the meaning of the ADA, having an impairment that "substantially limit[ed]" one or more major life activities, or being regarded as having such an impairment. 42 U.S.C. §12102(1). Here, plaintiff contends that he is not actually disabled, but alleges that USPS regarded him as such. Nonetheless, plaintiff fails to identify (let alone to offer any proof concerning) any major life activity as to which USPS allegedly regarded his performance as being substantially limited. (Dkt.#1, Dkt. #18-5 at 51-52). This omission alone would arguably be sufficient to support a finding that plaintiff cannot establish his prima facie case. *See generally Reeves v. Johnson Controls World Servs.*, 140 F.3d 144, 153-54 (2d Cir. 1998).

To the extent that plaintiff's allegations and evidence might be generously interpreted to claim that USPS believed he was substantially limited in the major life activity of working, plaintiff has offered no evidence that USPS believed he was precluded from holding the requisite "class of jobs or a broad range of jobs in various classes" as opposed to the particular position of CCA. *Gaines v. New York City Transit Auth.*, 528 F. Supp. 2d 135, 145 (E.D.N.Y. 2007). *See also 29* C.F.R. §1630.(j)(3)(i).

There is no evidence that USPS believed plaintiff was unfit to perform any position except for the CCA position. It is well settled that for purposes of a "regarded as" disability claim, "[a]n employer's belief that an employee is unable to perform one task with an adequate safety margin does not establish per se that the employer regards the employee as having a substantial limitation on his ability to work in general." *Silman v. Utica College*, 2016 U.S. Dist. LEXIS 106828 at *22 (N.D.N.Y. 2016) (quoting *Redlich v. Albany Law Sch. Of Union Univ.*, 899 F. Supp. 100, 107 (N.D.N.Y. 1995)). Plaintiff therefore cannot demonstrate that USPS believed he was substantially limited in his ability to perform the major life activity of working.

Even so, in the interest of granting plaintiff every favorable inference, I note that even assuming *arguendo* that plaintiff could demonstrate that USPS regarded him as disabled with respect to some other major life activity (e.g., breathing or sleeping), plaintiff has not produced, nor does the record contain, a shred of evidence that plaintiff was "otherwise qualified" to perform the essential functions of the CCA job, with or without reasonable accommodation, during the period when his sleep apnea was insufficiently treated.

Because sleep apnea disrupts sleeping patterns and is known to cause, among other things, attention deficits and excessive daytime sleepiness, licensed commercial drivers treating sleep apnea with a CPAP device are recommended by the Federal Motor Carrier Safety Administration to use it for a prescribed four-hour daily period, 70% of the time, in order to ensure their ability to drive safely. Dr. Tunaitis testified, and plaintiff does not dispute, that although the CCA position is not a commercial driving position, safe driving is a critical component of that position. As such, Dr. Tunaitis has borrowed, and consistently applied, the 70% CPAP usage threshold in evaluating the suitability of USPS applicants with diagnoses of obstructive sleep apnea, for positions involving driving. (Dkt. #18-8, Tunaitis Aff. at ¶10). At the time Dr. Tunaitis examined plaintiff, plaintiff's self-reported rate of CPAP usage was 47%, significantly below the 70% minimum that Dr. Tunaitis (and at least one federal agency) found to be a reasonable guide for ensuring driver safety. At no time did plaintiff actually propose to the USPS (nor does he now identify), any reasonable accommodation that would have allowed him to drive safely despite having insufficiently-treated sleep apnea.[2] (Dkt. #18-5 at 41).

---

2 For the same reason, to the extent that plaintiff has attempted to allege a claim for failure to engage in the interactive process required for consideration of a request for a reasonable accommodation, that claim is dismissed. *See generally Silman*, 2016 U.S. Dist. LEXIS 106828 at *24-*25. No reasonable accommodation was requested or proposed with respect to the "no driving" restriction, so there was nothing for an interactive process to consider.

Finally, there is no evidence to support a finding that the USPS's initial decision not to hire plaintiff was made under circumstances suggesting discrimination, or that could rebut USPS's legitimate, non-discriminatory reason for initially declining to hire plaintiff. To the contrary, the evidence indicates that USPS did, as it claims, believe that plaintiff was fully capable of performing the position of CCA so long as he was at least 70% compliant with his CPAP usage, and that USPS's actions were motivated solely and transparently by safety concerns. It is undisputed that as soon as plaintiff achieved 70% compliance, USPS immediately lifted the "no driving" restriction and hired him into the CCA position, notwithstanding his sleep apnea. *See generally Gaines*, 528 F. Supp. 2d at 147-48 (plaintiff who was removed from a train operator position due to hearing loss cannot establish an ADA claim, despite years of previous, incident-free train operation, because no reasonable jury could find that the employer's actions were motivated by anything other than safety-oriented concerns).

Because no reasonable finder of fact could find that plaintiff was regarded as disabled, that he was otherwise qualified to perform the essential requirements of the CCA position at the time USPS initially declined to hire him, and/or that USPS's reason for refusing to hire plaintiff into a driving position with substantially untreated sleep apnea was pretextual, plaintiff's failure-to-hire discrimination claim is dismissed.

## II.   Plaintiff's Retaliatory Discharge Claim

Plaintiff also claims that USPS retaliated against him for filing an EEOC complaint, by terminating his employment during his probationary period.

Claims for retaliation are analyzed under the same burden-shifting framework established for Title VII cases. *See Lovejoy-Wilson v. Noco Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir.

8

2001) ("[w]e analyze a retaliation claim under the ADA using the same framework employed in Title VII cases"). In order to establish a prima facie case of retaliation, plaintiff must show that: (1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity. *See Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). A plaintiff's burden at this prima facie stage is de minimis. *See Richardson v. New York State Dept. of Correctional Serv.*, 180 F.3d 426, 444 (2d Cir. 1999).

Once a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged employment decision. If a defendant does so, the plaintiff must identify evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation, *and* that the real reason for its actions was ADA-proscribed retaliation. *See Garnett-Bishop v. N.Y. Cmty. Bancorp, Inc.*, 2017 U.S. Dist. LEXIS 29764 at *106 (E.D.N.Y. 2017) (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 515-516).

Here, even assuming *arguendo* that plaintiff has established a prima facie case of retaliation based on his dismissal following an EEOC charge against two USPS employees, USPS has identified a legitimate, nondiscriminatory reason for the termination of plaintiff's employment which plaintiff fails to rebut: his inability to consistently and timely perform the requirements of the CCA position, despite additional training.

It is undisputed that plaintiff was expected to organize and deliver mail on his assigned route within his eight-hour shift each day. Due to initial difficulties with completing his route on time, USPS provided plaintiff with additional training, amounting to a total of at least twelve days of training – 2 to 3 times the number of training days generally required for a CCA.

9

Despite that additional training, plaintiff remained consistently unable to make his deliveries within the time required. Plaintiff admits that his performance was deficient, notwithstanding a warning that he would be terminated if it did not improve, but argues that the shorter daylight hours that persisted through the fall months made the job more difficult (Dkt. #1 at 7).

The gravamen of plaintiff's retaliation claim appears simply to be that USPS's expectation – that he would complete the requirements of the job within the same timeframe as others working in that position – was unreasonable. Plaintiff does not contend that he was treated differently from other probationary CCAs who had not engaged in protected activity. In fact, an average of 30-40% of CCAs-in-training are terminated during their probationary period, and plaintiff was one of fifteen CCAs-in-training whose employment was terminated by Minni for performance issues during the same time period. Plaintiff identifies no evidence, beyond the mere fact of his protected activity, that his termination was motivated by retaliatory animus, and his allegations of pretext are entirely conclusory. There is no evidence by which a reasonable finder of fact could conclude that USPS's stated reason for plaintiff's termination (poor performance) was pretextual, and that the real reason for his termination was retaliation was his filing of an EEOC charge.

## **CONCLUSION**

For the foregoing reasons, plaintiff has failed to produce sufficient evidence by which a reasonable trier of fact could find that he has established his discrimination or retaliation claims. Accordingly, defendant's motion for summary judgment (Dkt. #18) is granted, and plaintiff's

claims of discrimination and retaliation under the ADA and the Rehabilitation Act are dismissed, with prejudice.

    IT IS SO ORDERED.

                                    _____
                                          DAVID G. LARIMER
                                     United States District Judge

Dated: Rochester, New York
       March 29, 2017.